**SHENDOCK**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS.**

**Appeal of Stephen SHENDOCK.**

No. 88–3335.

United States Court of Appeals, Third Circuit.

Submitted Oct. 14, 1988.

Resubmitted on Petition for Panel Rehearing April 13, 1989.

Reargued In Banc Dec. 11, 1989.

Decided Jan. 12, 1990.

Gregory R. Neuhauser, (argued), Kevin J. McKeon, Malatesta, Hawke & McKeon, Harrisburg, Pa., for petitioner.

Robert P. Davis, Sol. of Labor, Donald S. Shire, Associate Sol., for Black Lung Benefits, Barbara J. Johnson, (argued), Counsel for Appellate Litigation, Paul L. Frieden, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent.

Resubmitted on Petition for Panel Rehearing April 13, 1989

Before MANSMANN, HUTCHINSON and VAN DUSEN, Circuit Judges.

Reargued In Banc Dec. 11, 1989

Before GIBBONS, Chief Judge, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

I.

Dissatisfied with the decision of the Benefits Review Board (Board) dated April 15, 1987 that denied his claim for black lung benefits, Stephen Shendock (Shendock) filed a petition for review in this Court on January 20, 1988, a little more than seven months after the sixty days that § 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(c) (West 1986), allows a party seeking review of a Benefits Review Board decision in black lung cases.[1] Shendock contends that we have power to entertain his petition for review on its merits because § 921(c)'s requirement that petitions for review be filed within sixty days of the Board's decision is not a jurisdictional prerequisite to review, but merely a statute of limitations that can and should be tolled under the circumstances of this case. Respondent, Director of the Office of Workers' Compensation Programs (Director), contends that the sixty-day requirement is jurisdictional and that therefore this Court is without power to entertain Shendock's petition and to extend the sixty-day time for filing, despite the equitable considerations that Shendock says the circumstances of this case present.

■ The issue of whether § 921(c)'s sixty-day time limit is jurisdictional is a matter of first impression in this Circuit. The statute itself uses the term "jurisdiction," and there is no indication either in its structure or in the scant legislative history available that Congress did not mean what it said when it used that term. Therefore, in harmony with all the other courts of appeals that have considered the issue, we hold that we lack judicial power to consider Shendock's petition. Accordingly, we cannot consider the circumstances of this case even though the Director concedes they would justify tolling the sixty-day time period if it were merely a statute of limitations. Likewise, we cannot consider the merits of Shendock's case.[2]

---

1. See also 20 C.F.R. § 802.410 (1986). The Black Lung Benefits Act, 30 U.S.C.A. §§ 901–945 (West 1986), incorporates by reference the procedures for review of claims under the Longshore and Harbor Workers' Compensation Act. See 30 U.S.C.A. § 932(a) (West 1986) (incorporating 33 U.S.C.A. § 921).

2. We recognize that the United States Supreme Court has not decided whether equitable tolling is available under § 921(c), finding it unnecessary to reach that issue in Pittston Coal Group v. Sebben, —— U.S. ——, 109 S.Ct. 414, 425, 102 L.Ed.2d 408 (1988). However, for the reasons hereinafter set forth, we believe that it would find the doctrine unavailable on the language

## II.

Shendock is a seventy-two year old resident of Edwardsville, Luzerne County, Pennsylvania. Luzerne is one of six counties in northeastern Pennsylvania containing large deposits of anthracite coal. In common with many other older residents of those counties, Shendock spent a number of his years laboring in the mines that produced anthracite. More than nine years ago, on December 9, 1980, he filed an application for benefits under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901–945 (West 1986). A claims examiner in the Department of Labor denied his claim on April 24, 1981. He then sought an informal conference in accordance with the administrative procedure that the Department's regulations provide for the processing of such claims. One was held on July 24, 1981, before a deputy commissioner of the Department of Labor. The deputy commissioner agreed with the claims examiner and informally denied Shendock's claim.

Acting through counsel, Shendock asked for a formal hearing before an administrative law judge (ALJ). After that formal hearing in Wilkes–Barre, Pennsylvania, the ALJ issued a decision and order denying benefits on April 12, 1985. In denying benefits, the ALJ concluded that Shendock did not establish the existence of pneumoconiosis, and also did not establish that any respiratory disease he may have had was attributable to past coal mine employment or that he was disabled as a result of pneumoconiosis.

Shendock, still acting through counsel, then appealed the ALJ's decision to the Board. On April 15, 1987, the Board held that the ALJ, in deciding that Shendock did not have pneumoconiosis, had not properly considered the presumptions that Shendock was entitled to because of the length of his employment in the anthracite industry. The Board also held, however, that the ALJ's error was harmless because he had correctly found that Shendock had not presented sufficient medical evidence to show his pneumoconiosis was disabling. Thus, the Board affirmed the ALJ's denial of benefits.

Notice of this decision and of Shendock's right to appeal to the appropriate court of appeals was sent to the office of Gifford S. Cappellini (Cappellini), the attorney who had represented Shendock in the proceedings before the ALJ and the Board. However, Cappellini could no longer represent Shendock because he had become a state court judge. The attorney who apparently took over Judge Cappellini's practice, Thomas S. Cometa (Cometa), was unwilling to represent Shendock on appeal to this Court. The supplemental record [3] shows that Cometa wrote to Shendock on April 23, 1987, enclosing "a copy of the correspondence I received from the US Dept. of Labor, Benefits Review Board denying you benefits." Director's Supplementary Appendix at 18.[4] Cometa went on to say that he did not think an appeal would be successful and that he would therefore "be unable to assist [Shendock] in an appeal to the US Court of Appeals should [he] decide to pursue an appeal." *Id.* He went on to expressly state that the decision of the Board would become final if an appeal were not taken within sixty days of April 15, 1987 and told Shendock that if he wanted to retain another attorney, that attorney

and structure of this particular statute, at least in the absence of circumstances, not existing here, that would work a denial of due process. *Cf. Bowen v. City of New York,* 476 U.S. 467, 478–82, 106 S.Ct. 2022, 2029–31, 90 L.Ed.2d 462 (1986) (secret internal policy of the Secretary of Health and Human Services in adjudicating Social Security Act claims equitably tolled the limitations period for seeking administrative or judicial review). Absent constitutional imperative, the federal judiciary generally, and the courts of appeals particularly, as courts of limited jurisdiction, are without power to ignore Congress's plain intent to build a jurisdictional limitation into a grant of judicial power to vindicate a statutory entitlement. The remedy for the harsh result that the circumstances of this case work upon Shendock is with Congress. It has the power to amend § 921(c). This Court does not.

3. The parties have supplemented the record at our request. *See* Fed.R.App.P. 10(e).

4. It does not show whether Shendock received a copy of the decision with a right to appeal notice attached.

should contact Cometa immediately. *Id.* The supplemented record also shows that Cometa received a phone call from Shendock's wife a few days later, on April 27, 1987. *Id.* at 16. He reiterated to her his opinion that an appeal would not bring a favorable decision but advised her again of Shendock's right to appeal and suggested that she contact the Wilkes–Barre Black Lung Field Office for assistance in filing it. *Id.*

Shendock did not retain the services of another attorney.[5] Instead, on May 4, 1987, his wife went to the local black lung office with a letter he had signed and dated that day. The letter was addressed to the U.S. Department of Labor, Benefits Review Board, 1111 20th St., N.W., Suite 757, Washington, DC 20036. Speaking "[t]o whom it may concern," it stated simply: "I would like to appeal my case to the U.S. Court of Appeals. I do not agree with the decision of the Benefits Review Board dated 4–15–87." Addendum to Brief for Petitioner at 4. The letter also gave Shendock's social security number and the Benefits Review Board number assigned to his case.

Shendock's wife gave the letter to Jack Geller (Geller), an employee in the Wilkes–Barre black lung office. Geller told her that he would forward the letter to the Board "right away." *Id.* at 2. Despite this assurance, the postmark on the letter shows that it was not sent to the Board until June 5, 1987. *Id.* at 3. The Board received the letter on June 15, 1987, the last day of the sixty-day time period that § 921(c) provides for filing a petition for review.[6]

After the Board received the letter, Shendock heard nothing further about his claim for almost seven months. Then, on January 7, 1988, he was sent a letter from the Clerk of the Benefits Review Board giving him the address of the Clerk of this Court and advising him that his appeal had to be filed there. Shendock followed that advice and sent a letter asking for judicial review that our Clerk's office received on January 20, 1988.

### III.

We must decide, in the first instance, whether we have jurisdiction to hear this petition. *See Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934).[7] Therefore, we must also determine whatever facts are necessary to the resolution of the jurisdictional issue from the record, as it has been supplemented in accordance with Federal Rule of Appellate Procedure 10(e).[8]

---

**5.** Shendock continued to proceed *pro se* until we decided that his case should be heard *in banc.* In that connection, we take this opportunity to thank Shendock's court-appointed counsel, Gregory R. Neuhauser, Esquire, and Kevin J. McKeon, Esquire, for their careful, thoughtful work on behalf of their client.

**6.** Sunday, June 14, 1987, was the sixtieth day following the issuance of the Board's April 15, 1987 decision. A petition for review filed the next day, June 15, 1987, therefore, would be deemed timely had it been filed in the proper place. *See* Fed.R.App.P. 26(a).

**7.** Although the Director discussed the jurisdictional issue in his "Memorandum in Support of Dismissal for Lack of Jurisdiction" filed with a motions panel of this Court on April 20, 1988, he did not further discuss the issue when the motion was referred to a merits panel. In fact, the initial brief he filed with the merits panel stated:

This Court has jurisdiction over this appeal from a final decision and order of the Benefits Review Board, United States Department of Labor, pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 921(c), as incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. 932(a).

Brief for Respondent at 1 (filed Sept. 3, 1988). In his petition for rehearing, however, he again raised the jurisdictional issue. Of course, jurisdiction is never waived; indeed this Court can always raise it on its own motion, and we are continuously required to discern whether we have jurisdiction over a case or controversy before ruling upon its merits.

**8.** The parties have, at our request, supplemented the record by providing us with an affidavit from Cometa. The affidavit details Cometa's advice to Shendock about the Board decision and also reprints Cometa's letter to Shendock advising him in writing of his right to appeal. The supplemented record also includes an affidavit from Shendock's wife concerning her efforts to file the appeal, Shendock's letter of May 4, 1987 to the Board expressing his desire to appeal and the resulting correspondence from

■ When Congress intends the sixty days it specified as the time to seek review of an adverse Board decision in a court of appeals to be a mandatory condition upon the availability of the judicial remedy of review, the statutory provisions relating to the time and place of filing are termed "jurisdictional." If, on the other hand, Congress intends to grant us discretion to consider the particular circumstances surrounding the efforts of the party seeking review to meet the statute's requirements, the provisions are treated as a statute of limitations that can be tolled when principles of equity would make their rigid application unfair. In determining which of these interpretations Congress intended in first passing § 921(c) and later, by 30 U.S. C.A. § 932(a), applying it to petitions for review of Board decisions under the Black Lung Benefits Act, we start, as always, with the language of the statute itself. Section 921(c) reads, in relevant part:

(c) Court of appeals; jurisdiction; persons entitled to review; petition; record; determination and enforcement; service of process; stay of payments

Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. *Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree* affirming, modifying, or setting aside, in whole or in part, the order of the Board and

enforcing same to the extent that such order is affirmed or modified....

33 U.S.C.A. § 921(c) (emphasis added).

We see at once that Congress chose to attach the term "jurisdiction" to the filing requirements contained in the text of § 921(c). Clearly, its use of the term "jurisdiction" in describing the effect of noncompliance with § 921(c)'s filing provisions is entitled to considerable weight. Indeed, it is difficult to see how Congress's intent could be made any clearer. Thus, our task could easily be limited to the common definition of the word that Congress used.

"Jurisdiction" is commonly defined as the "power of declaring and administering law or justice; legal authority or power." 1 The Compact Edition of the Oxford English Dictionary 1522 (1971). The legal definition of "jurisdiction" is similar: "It is the authority by which courts and judicial officers take cognizance of and decide cases.... Power and authority of a court to hear and determine a judicial proceeding." Black's Law Dictionary 766 (5th ed. 1979) (citations omitted). Simple application of these definitions to this case would thus end our inquiry adversely to Shendock.

We recognize, as Shendock contends, that "[i]t is not helpful ... to attach labels such as 'jurisdictional' to the actions of Congress before first examining the language of the statute and the context in which that language was used." *Dunn v. United States*, 775 F.2d 99, 103 (3d Cir. 1985). *Accord Grandison v. Moore*, 786 F.2d 146, 148 (3d Cir.1986). We also recognize that *a priori* attachment of the label "jurisdiction" to a statute's filing requirements without examination of its language and structure, as well as the congressional policy underlying it, would be an abdication of our duty to interpret the language of a statute in accordance with Congress's intent in passing it. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 392–94, 102 S.Ct. 1127, 1131–33, 71 L.Ed.2d 234 (1982).

the Board more than eight months later. From all of this, it is apparent that Shendock received timely advice that his remedy of appeal lay with the court of appeals, not with the Benefits Re-

view Board. Accordingly, we believe this case does not implicate the due process clause of the Fifth Amendment.

Here, however, it is not the judiciary that has attached the label "jurisdiction" to § 921(c)'s filing requirements, but Congress itself. Surely we must assume that Congress knew the meaning of the term "jurisdiction" as it relates to the power of federal courts to hear and decide cases.

In that respect, this case differs from cases arising under the judicial review mechanism contained in the Social Security Act, 42 U.S.C.A. § 405(g) (West 1983), which the United States Supreme Court has interpreted as a statute of limitations. *See Bowen v. City of New York*, 476 U.S. 467, 478–82, 106 S.Ct. 2022, 2029–31, 90 L.Ed.2d 462 (1986); *Mathews v. Eldridge*, 424 U.S. 319, 328 n. 9, 96 S.Ct. 893, 899 n. 9, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975). Section 405(g) does not contain the word "jurisdiction" in setting forth its sixty-day limitation on the filing of civil actions to review decisions of the Secretary of Health and Human Services. It simply states:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision *or within such further time as the Secretary may allow.*

42 U.S.C.A. § 405(g) (emphasis added).

After first noting in *Salfi* that § 405(g)'s sixty-day requirement does "specify a statute of limitations," 422 U.S. at 764, 95 S.Ct. at 2466, and then reiterating in *Mathews* the holding in *Salfi* that § 405(g) is a statute of limitations, 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9, the United States Supreme Court explained in *City of New York* that Congress "express[ed] its clear intention to allow tolling in some cases" by authorizing the Secretary to toll the sixty-day time limit under that section, 476 U.S. at 480, 106 S.Ct. at 2030.

Similarly, in construing provisions setting forth the time for filing charges with the Equal Employment Opportunity Commission under 42 U.S.C.A. § 2000e–5(e) (West 1981) as a statute of limitations, the United States Supreme Court recognized in *Zipes* that § 2000e–5(e) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes*, 455 U.S. at 394, 102 S.Ct. at 1133. Congress itself made no express statement that the time limits in § 2000e–5(e) were jurisdictional. Thus, the Supreme Court found itself able to consider the narrowing effect that a jurisdictional construction would have on the remedial purpose of the statute in light of the large percentage of those persons Congress wanted to help who would be likely to proceed *pro se.*

In the face of Congress's express statement that the filing requirements of § 921(c) are jurisdictional, however, the truism that Congress intended the provisions of the Black Lung Benefits Act to be liberally construed as remedial legislation is of little help to Shendock's case. Strictly speaking, § 921(c) is not a part of the Black Lung Benefits Act itself. Its provision of a judicial remedy to parties aggrieved by decisions of the Benefits Review Board applies not only to black lung cases, but also to cases arising under the Longshore and Harbor Workers' Act.

Shendock's argument that the scanty legislative history surrounding the passage of § 921(c) and its incorporation into the Black Lung Benefits Act by 30 U.S.C.A. § 932(a) evidences no congressional intent to preclude the tolling of its time requirements is also unavailing. It stands the argument favoring the use of legislative history on its head. Even if it is proper to use legislative history to contradict the plain language of the statute, the history should at least show that Congress has used the language in a specialized or technical sense not in accord with its ordinary meaning, or perhaps that its use in the ordinary sense would lead to absurd results in the context of the rest of the statute. *See Hallstrom v. Tillamook County*, — U.S. —, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989) ("We have held that '[a]bsent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive." (citation omitted)); *Rector of Holy Trinity*

*Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). Congress expressed its intent by using the word "jurisdiction," and the absence of legislative history independently showing an intent to use the word in accordance with its ordinary meaning proves nothing.

Shendock's remaining textual argument that the statutory term "filing," in the phrase "[u]pon such filing" in § 921(c), refers to the Board's filing of the record, instead of the phrase "filing of the petition for review" that appears earlier in the section, also fails. This grammatical argument is based on the principle of statutory construction that referential words refer solely to the last antecedent. However, "[w]here the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent." *See* 2A N. Singer, Sutherland Statutory Construction § 47.33, at 245 (Sands 4th ed. 1984). Here, the sense of the entire act is apparent. By accepting Shendock's argument, we would make our jurisdiction depend upon the compliance by the Board, an inferior tribunal, with the statutory command that it file the record with us, instead of upon an act of the party aggrieved by the Board's decision. Such a construction is wholly at odds with modern notions of appellate jurisdiction. It is the notice of appeal, or petition for review, filed by the party seeking appeal or review, that confers jurisdiction upon the court, not the inferior tribunal's compliance with the order to file the record.

Our holding that § 921(c)'s filing requirements are jurisdictional is supported by authority as well as reason and logic. All the other circuits that have considered the question have so held. *See Brown v. Director, OWCP,* 864 F.2d 120 (11th Cir. 1989); *Mussatto v. Director, OWCP,* 855 F.2d 513, 514 (8th Cir.1988) (per curiam) (dismissing for lack of jurisdiction petition received by Board on sixtieth day and forwarded to court, but not received by court until sixty-ninth day); *Bolling v. Director, OWCP,* 823 F.2d 165 (6th Cir.1987) (order) (no jurisdiction where petitioner's letter to Board was submitted within sixty-day period, but not forwarded to court until after period expired, and letter, which was treated by Board as motion to reconsider and was denied, was untimely as motion to reconsider and did not toll sixty-day period); *Butcher v. Big Mountain Coal, Inc.,* 802 F.2d 1506 (4th Cir.1986); *Arch Mineral Corp. v. Director, OWCP,* 798 F.2d 215 (7th Cir.1986) (dicta); *Clay v. Director, OWCP,* 748 F.2d 501 (8th Cir.1984); *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35 (2d Cir.1976) (Friendly, J.), *aff'd on other ground sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). *Accord Kentucky ex rel. Cabinet for Human Resources v. Brock,* 845 F.2d 117, 120 (6th Cir.1988) (citing *Bolling* as authority for jurisdictional nature of statutory time limits for filing petitions to review administrative decisions); *Dawe v. Old Ben Coal Co.,* 754 F.2d 225, 227–28 (7th Cir.1985) (time period for appeal to Board contained in 33 U.S.C.A. § 921(a) is jurisdictional and equitable tolling not permitted).

Thus, in *Brown,* the Eleventh Circuit reasoned as we do: "[W]e cannot fairly assume that section 921(c) and other similarly-worded statutes were drafted inadvertently, or that Congress intended the 60–day filing period to be in the nature of a statute of limitations when it uses the word 'jurisdiction' in the statute." 864 F.2d at 122. In *Clay,* the Eighth Circuit held "[w]e can review decisions of the Benefits Review Board only when they are brought before us under the conditions and within the time specified by statute." 748 F.2d at 503. *See also Danko v. Director, OWCP,* 846 F.2d 366, 369 (6th Cir.1988) (per curiam) (§ 921(c) does not contain "specific statutory authority" to enlarge the appeal time period). To the same effect are *Pittston Stevedoring Corp.,* 544 F.2d at 44, in which the court wrote "[w]e see no reason not to read 33 U.S.C. § 921(c) as meaning what it says," and *Adkins v. Director, OWCP,* 889 F.2d 1360, 1361 (4th Cir.1989), in which the court wrote "the 60–day period for noticing an appeal is set by statute and it is jurisdic-

tional." In *Adkins,* the Fourth Circuit refused to apply Federal Rule of Appellate Procedure 4(a) by analogy and so take jurisdiction over a petition for review filed with the Board because to do so "would disregard the clear statutory language creating and limiting appellate review of agency decisions." 889 F.2d at 1363.[9]

Shendock argues that the Supreme Court's decisions in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), imply these cases are wrongly decided. For the following reasons, we believe the Supreme Court's holdings in those cases are distinguishable. In *Houston,* a case Shendock heavily relies upon, the Supreme Court held that a prison inmate's delivery of a notice of appeal to his warden three days before the notice was required to have been filed in the district court under the thirty-day deadline of 28 U.S.C.A. § 2107 (West 1982) was sufficient to perfect his appeal despite the fact that the notice was not received by the court within that thirty-day period. Shendock cites *Houston* for the proposition that equitable tolling is permissible even in the face of § 2107's language making the notice of appeal requirement jurisdictional. We do not think that *Houston* stands for that broad proposition despite the fact that § 2107, read in conjunction with Federal Rules of Appellate Procedure 3 and 4, speaks in jurisdictional terms.

In *Houston,* the precise holding of the Court seems to be only that notices of appeal from a denial of *habeas corpus* by *pro se* prisoners are "filed" in accord with Federal Rule of Appellate Procedure 4(a)(1) when delivered to prison officials, not when the officials choose to forward them to the district court. Prisoners are at the mercy of prison authorities with respect to the forwarding of their mail. Under that circumstance, a holding that they should be deprived of access to court if their jailers delay mailing their appeals might raise serious questions of due process.

Thus, in *Grandison,* we said: "The Supreme Court recognized the unique circumstances of prisoners when it created an exception to the time for filing a notice of appeal ... in *Fallen....*" 786 F.2d at 149. *See also Smith v. Evans,* 853 F.2d 155, 161 (3d Cir.1988) ("The Court so held [in *Houston* ] in order to avoid the obvious unfairness caused by delays within the prison.").

Relying on his *pro se* status, Shendock also says that *Houston,* together with the decision of the United States Supreme Court in *Fallen,* "recognized the longstanding policy of excusing untimely filings by *pro se* litigants." Brief for Petitioner at 15. It seems to us, however, that this excuse is possible only when judges are given the power to excuse. A lack of jurisdiction deprives them of the power. Perhaps more importantly, the circumstances of *Houston* and *Fallen* are truly extraordinary. They involve efforts by *pro se* prisoners who "[did] all that could reasonably be expected to get the letter [of appeal] to its destination within the required [time]." *Fallen,* 378 U.S. at 144, 84 S.Ct. at 1692. In *Houston* itself, the Supreme Court said:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline....
>
> [N]othing in the statute suggests that, in the unique circumstances of a *pro se* prisoner, it would be inappropriate to conclude that a notice of appeal is "filed"

**9.** Under these circumstances, we find that it is not necessary to rely upon the Director's argument that statutory filing requirements are often jurisdictional, whereas filing requirements contained in court rules are often periods of limitations. Similarly, it is unnecessary for us to rely upon the language of Federal Rule of Appellate Procedure 26(b), which states, in relevant part:

> Nor may the court enlarge the time prescribed by law for filing a petition to enjoin, set aside, suspend, modify, enforce or otherwise review, or a notice of appeal from, an order of an administrative agency, board, commission or officer of the United States, except as specifically authorized by law.

within the meaning of [the statute] at the moment it is delivered to prison officials for forwarding to the clerk of the district court....

[T]he lack of control of *pro se* prisoners over delays extends much further than that of the typical civil litigant: *pro se* prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally.

108 S.Ct. at 2382, 2383, 2384.

This Court, like the Director, recognizes the harsh outcome that Shendock faces as a result of his unfortunate failure to meet the jurisdictional requirements of § 921(c). That harsh outcome, an outcome for which the Director's Wilkes–Barre office itself bears considerable responsibility, would, as the Director concedes, equitably toll the sixty-day filing requirement if § 921(c) were not jurisdictional. Shendock's argument is largely based upon the equities of his situation. In advancing it, he falls into the same type of erroneous circular reasoning that we cautioned against in *Dunn.* In other words, he assumes that equitable tolling is available. That is the very point in issue. Thus, all the cases he cites are cases in which Congress has not set up a jurisdictional impediment to late filing. Such is true of *City of New York* and of our decisions in *Bechtel v. Robinson*, 886 F.2d 644 (3d Cir.1989), and *Consolidated Freightways Corp. v. Larson*, 827 F.2d 916, 920 (3d Cir.1987) (counsel's inadvertent misdirection of notice of appeal to adjacent district court held excusable), *cert. denied*, 484 U.S. 1032, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988). *See also Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (pleadings drafted by *pro se* litigants must be held to less stringent standards).

 Equitable tolling or estoppel simply is not available when there are jurisdictional limitations. As the Eleventh Circuit said in *Brown:* "Jurisdictional limitations and the policies which they embody must be honored even in the face of apparent injustice or an administrative agency's obvious

misapplication or violation of substantive law." 864 F.2d at 124. Likewise, as the United States Court of Appeals for the District of Columbia Circuit noted in *National Black Media Coalition v. FCC*, 760 F.2d 1297, 1300 (D.C.Cir.1985), a lack of appellate jurisdiction mandates "an inability to act, not merely in unappealing cases, but in compelling cases as well." The Supreme Court recently explained in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988), that jurisdictional legislation must be observed even though "a harsh result" may obtain. *See also Hallstrom v. Tillamook County*, —— U.S. ——, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989) ("As a general rule, if an action is barred by the terms of a statute, it must be dismissed."); *Kowaleski v. Director, OWCP*, 879 F.2d 1173, 1176 (3d Cir.1989) (demanding "punctilious, literal, and exact compliance" with Federal Rule of Appellate Procedure 15, the Court concluded it lacked jurisdiction to consider appeal of a black lung claim where the caption of the case did not reflect a proper party claimant), *petition for cert. filed*, 58 U.S.L.W. 3399 (U.S. Nov. 13, 1989) (No. 89–759); *Hart v. J.T. Baker Chem. Co.*, 598 F.2d 829, 832 (3d Cir.1979) ("[w]here the filing requirements are considered 'jurisdictional,' non-compliance bars an action regardless of the equities in a given case"). Perhaps the point is best made in our recent opinion in *Lavallee Northside Civic Ass'n v. Coastal Zone Management Comm'n*, 866 F.2d 616, 625 (3d Cir.1989), wherein we said:

> If ... the time limitation is jurisdictional in nature, thus going to the very power to adjudicate, the court must consider the delay *sua sponte* and apply the statute strictly. In *Pomper v. Thompson*, 836 F.2d 131 (3d Cir.1987), we determined that the district court lacked authority to hear an appeal from an administrative agency filed two weeks after the statutory fifteen-day appeal period had expired. We reached our conclusion reluctantly, noting that the untimeliness had been caused by the agency's own error in misinforming the petitioners that they had thirty days in which to appeal.

Nevertheless, we concluded that the time specified in the statute was mandatory and jurisdictional and could not be tolled.

As we said in *Pomper v. Thompson*, 836 F.2d 131, 134 n. 3 (3d Cir.1987) (per curiam), "[a]ny time a case is decided on jurisdictional grounds rather than on the merits, there is the possibility that a litigant loses a case that he or she might have won on the merits." We regret the existence of that possibility here. However, Congress has dictated this result by declaring that the filing requirements set forth in § 921(c) are jurisdictional. We have no power to amend the statutes it enacts.[10]

■ Congress has not done so even though it recently had occasion expressly to consider the injustices that may occur when a party faced with a jurisdictional limitation on the time for filing an action files it in the wrong forum. The Federal Courts Improvement Act of 1982 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall

proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C.A. § 1631 (West Supp.1989). Unfortunately for Shendock, § 610 defines "court" as follows:

As used in this chapter the word "courts" includes the courts of appeals and the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Claims Court, and the Court of International Trade.

28 U.S.C.A. § 610 (West Supp.1989).

■ Had Shendock filed his petition for review in the district court or in another court of appeals, the matter could have been transferred to us. The statute, however, does not authorize transfer of a petition mistakenly filed in an administrative tribunal to the appropriate court of appeals. For that to happen, Congress must change the law. Absent statutory authority, the traditional general rule that a court may not transfer a matter over which it lacks jurisdiction governs. *See, e.g., Dantes v. Western Found. Corp. Ass'n*, 614 F.2d 299, 301 (1st Cir.1980) (citing our decision in *Atlantic Ship Rigging Co. v. McLellan*, 288 F.2d 589, 591 (3d Cir.1961),

---

10. We do note that even though we must dismiss Shendock's appeal for lack of jurisdiction, he may still be entitled to black lung benefits if he files a new claim and demonstrates "a material change in [his] condition[ ]." 20 C.F.R. § 725.309(d) (1989). In that connection, we note that he filed the claim now before us in 1980 and that it is well recognized medically that pneumoconiosis is a progressive disease whose symptoms increase in severity over time.

Even the Director has suggested that Shendock may be entitled to refile his claim. If the Director means that Shendock can file a new claim, this would not provide Shendock with benefits for the period between 1980 and the date of the new filing, even if he is successful with his new filing. We do not believe the Director is suggesting that Shendock should reopen his claim pursuant to 33 U.S.C.A. § 922 (West 1986), since that provision establishes a one-year limitation on reopening. However, we do not foreclose the Director from considering

whether that provision and the circumstances of this case permit tolling of the one-year limitation. Likewise, we do not preclude the Board, if asked by the parties, from considering Shendock's May 4, 1987 letter as a request for reconsideration of the Board's decision. In that connection, we note that 20 C.F.R. § 802.407 (1986) then required requests for Board reconsideration to be filed within 10 days. Shortly afterward, however, § 802.407 was changed to allow claimants 30 days to file a motion to reconsider with the Board.

Concededly, none of these possibilities provide a smooth road to success for Shendock in his efforts to obtain black lung benefits. His experiences with the decade of delay in reaching a resolution on the claim he filed in 1980 are bound to be discouraging, and he could be excused if he felt that Congress, in the Black Lung Benefits Act, promised him "bread," but gave him a "stone."

court of appeals held, prior to passage of 28 U.S.C.A. § 1631, that it lacked jurisdiction over appeal from Benefits Review Board and could not transfer matter to proper court of appeals). When it passed the Federal Courts Improvement Act of 1982, Congress chose not to alter the general rule for petitions mistakenly filed in an administrative tribunal instead of in the proper court. That seems to us to leave the general rule intact.

### IV.

Since the filing requirements of 33 U.S.C.A. § 921(c) are jurisdictional, we cannot entertain Shendock's untimely petition. We will dismiss it for lack of jurisdiction without considering either whether the surrounding circumstances excuse his failure to file it timely in the proper forum or the merits of his petition.