**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2808
_____

JAYQUON MASSEY,
                                        Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-00345)
Magistrate Judge:  Honorable Lisa P. Lenihan
_____

Argued: May 25, 2021
_____

Before:  GREENAWAY, JR., and SHWARTZ, <u>Circuit Judges</u>, and KANE, <u>District Judge</u>.[*]

(Opinion Filed: July 12, 2021)
_____

OPINION[**]
_____

---

[*] The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Craig M. Cooley [ARGUED]
Cooley Law Office
1308 Plumdale Court
Pittsburgh, PA 15239

Counsel for Appellant

Keaton Carr
Alicia H. Searfoss [ARGUED]
Allegheny County District Attorney's Office
436 Grant Street, Ste. 401
Pittsburgh, PA 15219

Counsel for Appellee

KANE, District Judge.

Jayquon Massey appeals from the District Court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The District Court denied Massey's petition as untimely and further determined that Massey failed to establish that his trial counsel rendered constitutionally ineffective assistance pursuant to Strickland v. Washington, 466 U.S. 668 (1984). We will reverse.

## I. Background

On November 20, 2007, in Pittsburgh's North Side neighborhood, two men accosted 18-year old Jayquon Massey and robbed him at gunpoint.[2] From the direction in which the two robbers fled, Massey saw a red SUV turn onto the street and speed past him. Upon returning to the North Side the following day, on four separate occasions Massey encountered the same SUV and the two men who had robbed him the previous

---

[1] Pursuant to 28 U.S.C § 636(c)(1), the parties voluntarily consented to proceed before Magistrate Judge Lisa P. Lenihan.

[2] The following facts are taken from the testimony of Massey as presented at trial.

day.

During the first two encounters, Massey saw the men in the SUV, one of whom was armed, and retreated to a nearby barbershop. When the SUV appeared a third time, it slowed upon approaching Massey and Massey brandished a handgun, believing the men were going to shoot him. Following this encounter, Massey ran to a friend's house to hide, only to be told to leave, and ultimately hid behind some bushes after a failed attempt to hide on the porch of the house. When the SUV approached the final time, Massey saw the front passenger pointing a gun at him. He then pulled out a handgun and fired two shots. A bystander, Cheryl Wilds, was killed.

Massey was charged in the Allegheny County Court of Common Pleas with criminal homicide, carrying a firearm without a license, and recklessly endangering another person ("REAP"). See 18 PA. CONS. STAT. §§ 2501, 6106, 2705. During the charge conference at the conclusion of trial, Massey's trial counsel requested a jury instruction on perfect self-defense. However, trial counsel refused an instruction on imperfect self-defense, or voluntary manslaughter, and requested that the jury be instructed on involuntary manslaughter instead, even after having been corrected on the law by the presiding judge and the prosecutor. Trial counsel failed to clearly articulate on the record his reason for rejecting the voluntary manslaughter instruction. Massey was convicted of first-degree murder and received a mandatory sentence of life imprisonment without parole.

Massey brought collateral proceedings pursuant to the Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 et seq., in which he alleged that trial counsel was

ineffective for failing to request a voluntary manslaughter charge. The PCRA court denied Massey's PCRA petition without an evidentiary hearing, concluding that trial counsel's decision to forego the instruction was a reasonable strategic decision aimed at securing a complete acquittal through a perfect self-defense claim. On appeal, the Pennsylvania Superior Court affirmed the decision of the PCRA court, but on prejudice grounds, determining that there was no reasonable probability that the jury would have returned "a conviction for a lesser offense than first-degree murder" even if charged on voluntary manslaughter. App. 412.

Once Massey exhausted his state court PCRA remedies, he had 121 days, or until March 17, 2016, to file a petition for federal habeas corpus relief pursuant to § 2254. Massey retained habeas counsel, and on March 8, 2016, habeas counsel directed his secretary to mail Massey's § 2254 petition via the United States Postal Service ("USPS") to the "U.S. Courthouse, Clerk of Courts, 700 Grant Street, Pittsburgh, PA 15219." App. 18. Two days later, on March 10, 2016, habeas counsel emailed the petition to Assistant District Attorney Ronald Wabby, advising that the petition had been mailed. Habeas counsel called the Clerk's Office for the Western District of Pennsylvania on March 24, 2016, to inquire about the civil case number assigned to Massey's § 2254 petition, only to be informed that it was never received. Habeas counsel then obtained an expedited ECF account and e-filed Massey's petition.

In a Memorandum Opinion and Order, the District Court rejected Massey's request for equitable tolling based on a theory of lost mail, concluding that habeas counsel failed to present sufficient evidence that he had in fact mailed the petition on

4

March 8, 2016, and that habeas counsel's failure to contact the Clerk's Office until after the deadline was "attorney error" that could not toll the statute of limitations. App. 158-159. Nonetheless, the District Court assessed the merits of Massey's petition and determined that the state courts did not unreasonably apply the relevant law governing claims for ineffective assistance of counsel pursuant to Strickland and were not unreasonable in making factual findings to support their conclusions that Massey's Strickland claim lacked merit. Massey subsequently sought a certificate of appealability from this Court. We granted a certificate of appealability and directed counsel to brief the following issues: (1) whether Massey's trial counsel rendered constitutionally ineffective assistance; and (2) whether USPS's failure to deliver mail constitutes an extraordinary circumstance warranting equitable tolling of the statute of limitations for habeas petitions.

## II. Discussion

The District Court had jurisdiction over Massey's petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 1331, 2241, and 2254. This Court has jurisdiction over Massey's appeal under 28 U.S.C. §§ 1291 and 2253.

### A. Equitable Tolling

As a preliminary matter, this Court must address the timeliness of Massey's habeas petition. We exercise plenary review over statute of limitations issues. Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). Further, this Court applies de novo review where the facts underlying a petitioner's equitable tolling claim are not disputed. Brinson v. Vaughn, 398 F.3d 225, 231 (3d Cir. 2005). The District Court's factual findings are

5

reviewed for clear error.  Ross v. Varano, 712 F.3d 784, 795 (3d Cir. 2013).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The United States Supreme Court has held that AEDPA's statute of limitations is nonjurisdictional and "subject to equitable tolling in appropriate cases."  Holland v. Florida, 560 U.S. 631, 645 (2010).  Further, "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling,'" see id. (emphasis in original) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990)), and, in the case of AEDPA, "the presumption's strength is reinforced by the fact that equitable principles have traditionally governed the substantive law of habeas corpus," see id. at 646 (internal quotation marks omitted) (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)).  This Court has acknowledged that equitable tolling is proper where "principles of equity would make [the] rigid application [of a limitation period] unfair."  Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998) (alterations in original) (internal quotation marks omitted) (quoting Shendock v. Dir., Off. of Workers' Comp. Programs, 893 F.2d 1458, 1462 (3d Cir. 1990)).

Generally, a petitioner is entitled to equitable tolling if he can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  The diligence required for equitable tolling purposes is "reasonable diligence," not maximum, extreme, or exceptional diligence.  Holland, 560 U.S. at 653; Ross, 712 F.3d at 799.  A

6

petitioner's exercise of reasonable diligence is a subjective determination based on the facts and circumstances of each individual case. <u>Ross</u>, 712 F.3d at 799. The extraordinary circumstances prong is similarly assessed subjectively. <u>Id.</u> at 802-03. However, it is also clearly established that "the exercise of a court's equity powers . . . must be made on a case-by-case basis," <u>see</u> <u>Holland</u>, 560 U.S. at 649-50 (alteration in original) (internal quotation marks omitted) (quoting <u>Baggett v. Bullitt</u>, 377 U.S. 360, 375 (1964)), and that "[t]he flexibility inherent in equitable procedure enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices," <u>see</u> <u>id.</u> at 650 (second and third alteration in original) (internal quotation marks omitted) (quoting <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 248 (1944)).

Massey requested that the District Court find that lost mail constitutes an extraordinary circumstance warranting equitable tolling of AEDPA's statute of limitations. The District Court did not rest its decision to deny tolling on this basis. Instead, after careful consideration of the record, the District Court determined that there was insufficient evidence to reach the issue. This Court has similarly thoroughly reviewed the facts of record and the arguments presented by the parties. Because we conclude that the particular factual circumstances present here compel the exercise of our discretion to toll the statute of limitations, we need not squarely decide whether a claim of lost mail warrants tolling, or whether Massey has proffered sufficient evidence to establish such a claim.

It is undisputed that Massey has diligently pursued his rights in this case. For over

7

a decade, he has timely sought relief from his judgment of conviction through post-conviction and habeas proceedings. He secured counsel in order to present his ineffective assistance claim to the courts, and he has never wavered in his belief in the strength of his claim—a claim that this Court finds meritorious, see infra. It is further undisputed that there was only a minimal, seven-day delay between the expiration of the one-year limitations period and the date on which Massey ultimately filed his § 2254 petition. Further, there is sufficient, if circumstantial, evidence to indicate that habeas counsel had a good-faith belief that the petition was filed well in advance of the deadline.

In weighing whether equitable tolling should be extended in these circumstances, this Court notes the two primary purposes of a statute of limitations: providing defendants with timely notice and avoiding stale claims. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554-55 (1974). Here, the Commonwealth was placed on notice of Massey's § 2254 petition through habeas counsel's email to Mr. Wabby at least as early as March 10, 2016, seven days prior to the expiration of the statute of limitations. Accordingly, prior to the filing deadline, "defendants ha[d] the essential information necessary to determine both the subject matter and size of the prospective litigation," see id. at 555, consistent with a primary purpose of the limitations period.

Upon consideration of the totality of the circumstances, and cognizant of the strength of the presumption in favor of granting equitable tolling in habeas cases, see Holland, 560 U.S. at 645-46, we hold that the narrow factual circumstances presented here constitute extraordinary circumstances that warrant equitable tolling. Therefore, in light of the foregoing, we will toll the statute of limitations for seven days, deem

8

Massey's § 2254 petition timely filed, and proceed to the merits of Massey's ineffective assistance claim.

## B. **Strickland** Analysis

Under AEDPA, a federal court may review a petitioner's habeas corpus claim if "he is in custody in violation of the Constitution or laws or treaties of the United States" and "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(a); id. § 2254(b)(1)(A). If the constitutional claim was "adjudicated on the merits in State court proceedings," id. § 2254(d), the court shall not grant habeas relief unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. Factual findings made by the state courts are presumed correct and only rebuttable by clear and convincing evidence. Id. § 2254(e)(1).

In determining whether a state court decision involved an unreasonable application of clearly established federal law, a habeas court conducting AEDPA review "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington v. Richter, 562 U.S. 86, 102 (2011). In order to establish entitlement to relief, a collateral attack on a conviction based upon a claim of ineffective assistance of counsel must meet a two-part test established by the

Supreme Court in Strickland. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

The first Strickland prong requires a petitioner to "establish . . . that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires a petitioner to show that counsel made errors "so serious" that counsel was not functioning as the counsel guaranteed under the Sixth Amendment. Strickland, 466 U.S. at 687. To that end, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" measured "under prevailing professional norms." Id. at 688. Although "[t]here is a 'strong presumption' that counsel's performance was reasonable," see Jermyn, 266 F.3d at 282 (quoting Strickland, 466 U.S. at 688), "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland," see Hinton v. Alabama, 571 U.S. 263, 274 (2014). However, under AEDPA, federal courts must be "doubly deferential" when evaluating Strickland claims under § 2254(d)(1). Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Accordingly, in order to provide relief where a state court has rejected a Strickland claim, this Court must find that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

Further, a state court's factual findings are presumed correct unless the petitioner can rebut the presumption with clear and convincing evidence. Rice v. Collins, 546 U.S. 333, 338-39 (2006) (citing 28 U.S.C. § 2254(e)(1)). A state court finding is objectively

10

unreasonable where the state court record clearly and convincingly demonstrates its incorrectness.  Miller-El v. Cockrell, 537 U.S. 322, 348 (2003).

Here, the PCRA court assumed that trial counsel made a strategic choice to forgo a voluntary manslaughter charge because it would have frustrated trial counsel's efforts to show that Massey acted reasonably.  Without holding a hearing to allow Massey to elicit testimony from trial counsel, the PCRA court found that trial counsel presented a "pure self-defense claim" with the goal of securing a complete acquittal.  App. 346.  We conclude that the state court record clearly and convincingly demonstrates that this finding is incorrect.

First, the suggestion that trial counsel pursued a pure self-defense claim in order to avoid a compromise verdict is belied by the fact that trial counsel insisted on an involuntary manslaughter charge during the charge conference, even after having been informed that such a charge was legally unsound based on the evidence he had presented throughout trial, including the testimony of Massey, who admitted to firing at the men in the SUV.[3]  This request alone does not comport with a finding that trial counsel was exclusively pursuing a full acquittal, nor do counsel's concessions during the charge conference that jurors could find Massey acted recklessly.  Finally, during closing

---

[3] A defendant can only be convicted of voluntary manslaughter if he acted intentionally. Commonwealth v. Weston, 749 A.2d 458, 462 (Pa. 2000).  Involuntary manslaughter, on the other hand, occurs where a defendant causes the death of another person by committing an act "in a reckless or grossly negligent manner."  18 PA. CONS. STAT. § 2504(a).  If a defendant acted intentionally, the defendant is not entitled to an involuntary manslaughter charge.  See Commonwealth v. Fletcher, 986 A.2d 759, 791 (Pa. 2009).  Here, there was no dispute that Massey intentionally fired the gun at the men in the SUV.

11

argument, trial counsel argued that Massey was "stupid" and "irresponsible," and conceded that jurors could find Massey guilty of the REAP count or involuntary manslaughter for acting recklessly. App. 1077.

Although competent counsel is entitled to make a strategic decision to decline a particular jury instruction, the record simply does not support a finding that trial counsel's decision in this case was based in sound strategy. Rather, a plain reading of the charge conference transcript, especially when combined with Massey's testimony about the shooting, indicates that trial counsel lacked a fundamental understanding of the essential legal differences between voluntary and involuntary manslaughter.

As noted supra, an "attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton, 571 U.S. at 274. In addition, trial counsel's failure to articulate a strategic basis for his refusal of a voluntary manslaughter instruction on the record, even when specifically asked to do so by the prosecution in order to forestall precisely the claim presented in this case, provides additional record support for the proposition that trial counsel lacked a strategic basis for his decision. Accordingly, we conclude that the PCRA court's application of Strickland's first prong was unsupported by the record and objectively unreasonable, and that trial counsel's refusal of a jury instruction on voluntary manslaughter constituted deficient performance under Strickland.

The Superior Court's finding of a lack of prejudice under Strickland's second prong is equally flawed. Under the second Strickland prong, a petitioner "must

12

demonstrate that he was prejudiced by counsel's errors." Jermyn, 266 F.3d at 282. This prong requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. It is clearly established that this prong is satisfied as long as it is reasonably probable that counsel's deficient performance impacted only one juror's verdict. Buck v. Davis, 137 S. Ct. 759, 776 (2017); Marshall v. Hendricks, 307 F.3d 36, 103-04 (3d Cir. 2002); see also Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007) (acknowledging the single-juror standard in a non-capital case on habeas review).

In the present case, we must consider the scope of the prejudice inquiry. Despite the fact that Strickland's "outcome" analysis only requires a reasonable probability that a single juror was affected, the Superior Court focused its inquiry on whether it was reasonably probable that the "jury" would have returned a "conviction" less than first-degree murder. App. 412. The Superior Court did not consider the possibility that, but for counsel's deficient representation, the jurors may have reached an impasse, warranting a mistrial, i.e., a different outcome. The standard applied by the Superior Court was inordinately and improperly demanding and, therefore, objectively unreasonable and contrary to clearly established federal law.

The appropriate prejudice inquiry turns on whether it is reasonably probable that, had the jury been charged on voluntary manslaughter, at least one juror would have found that: (1) Massey subjectively believed he was in grave danger; (2) his subjective belief

13

was objectively unreasonable; (3) he did not provoke the fatal encounter; and (4) he did not have a completely safe avenue of retreat.  See Buck, 137 S. Ct. at 776; 18 PA. CONS. STAT. § 2503(b) (providing the elements of voluntary manslaughter); Commonwealth v. Sepulveda, 55 A.3d 1108, 1124-25 (Pa. 2012).  This standard is not stringent—it is "less demanding than the preponderance standard."  Jermyn, 266 F.3d at 282.

Massey asserts that he was prejudiced by trial counsel's decision to decline a jury instruction on voluntary manslaughter.  We agree.  Under Pennsylvania law, imperfect self-defense exists "where the defendant actually, but unreasonably, believed that deadly force was necessary."  Commonwealth v. Truong, 36 A.3d 592, 599 (Pa. Super. 2012).  A successful imperfect self-defense claim reduces murder to voluntary manslaughter.  Id.  If a defendant requests and receives a charge on justifiable, or "perfect," self-defense, he is typically entitled to a charge on voluntary manslaughter.  Sepulveda, 55 A.3d at 1124.

Neither perfect nor imperfect self-defense apply if the defendant provoked the use of force in the same encounter or if the defendant knew that he could have avoided the use of force by safely retreating.  18 PA. CONS. STAT. § 505(b)(2)(i)-(ii).  The Superior Court determined that it was not reasonably probable that the jury would have convicted Massey of voluntary manslaughter instead of first-degree murder because the jury could have concluded that Massey provoked the fatal encounter or failed to retreat.  However, again, the Superior Court's analysis was improperly demanding.  The fact that one or more jurors may have made those findings does not per se negate the possibility that at least one juror could have found otherwise.

Moreover, our review of the evidentiary record clearly and convincingly

14

demonstrates a lack of support for the Superior Court's findings on provocation and retreat. Massey and the men in the red SUV crossed paths in four separate encounters, including the final, fatal encounter. After each of the first three encounters, Massey retreated—the first two times to the barbershop, and the third time to a friend's house to hide, ultimately hiding behind some bushes when he was turned away from the house. Under Pennsylvania law on provocation, a jury reasonably could have found that Massey did not provoke the fatal encounter by brandishing a weapon during the third encounter due to the retreat of both parties in different directions and a delay between the encounters. See, e.g., Commonwealth v. Samuel, 590 A.2d 1245, 1249 (Pa. 1991) (finding that where a defendant introduces, but then removes, a weapon from the conflict, and the victim delays before retaliating, the introduction of a weapon does not constitute provocation as a matter of law).[4]

In light of the foregoing, we conclude that fairminded jurists would not disagree that, had voluntary manslaughter been charged in this case, it is reasonably probable that at least one juror would have found reasonable doubt with respect to a first-degree murder charge and accepted Massey's imperfect self-defense claim. Accordingly, we hold that Massey was prejudiced by the lack of a jury instruction on voluntary manslaughter. Having determined that Massey received constitutionally ineffective assistance of counsel during his trial pursuant to Strickland, we will grant the requested

---

[4] Judge Shwartz concludes that it is unnecessary to address whether the evidence demonstrates that Massey had an opportunity to retreat, but if reached, she would conclude that the evidence showed that Massey had opportunities to retreat safely.

15

relief.

## III. Conclusion

For the foregoing reasons, we will reverse the District Court's order denying Massey's petition for a writ of habeas corpus and remand with instructions that it issue a writ of habeas corpus ordering Massey's release unless he is retried within a reasonable period of time.