Joe C. LONG, Petitioner,

v.

UNITED STATES DEPARTMENT OF the AIR FORCE, Respondent.

No. 81–2281.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1984.

Steven M. Angel, Oklahoma City, Okl., for petitioner.

David W. Kerber, Major, USAF, Washington, D.C. (John E. Green, Acting U.S. Atty., Oklahoma City, Okl., and Richard W. Freeman, Jr., Asst. U.S. Atty., Oklahoma City, Okl., were also on brief), for respondent.

Before HOLLOWAY, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

HOLLOWAY, Chief Judge.

This case is before us on a petition for review from an arbitrator's decision upholding disciplinary action that the United States Department of the Air Force (Respondent or employer) took against Joe C. Long (Petitioner or Long). Long has petitioned to our court for review. The petition for review is denied.

## I

### Factual background

In February and March of 1980 petitioner was observed leaving his duty station at Tinker Air Force Base. He did not have permission, and his time card reflected that he had been working during his absence. When the employer discovered this, it de-

cided to remove Long from the federal service. Long appealed this removal action. *See* 5 U.S.C. §§ 7701(a), 7511–13.

Before the presiding official, with one exception, Long did not argue that he had not been absent during the seven instances charged. He admitted the accuracy of the charges except as to one of seven days of such occasions; as to that day it was discovered that Long had three hours of previously approved annual leave and was, therefore, absent without permission for only three hours and seven minutes, rather than six hours and seven minutes. I R. 38. Long claimed that his removal was too harsh and would not promote the efficiency of the service. *See* 5 U.S.C. § 7513. In a decision dated October 2, 1980 the presiding official of the Merit Systems Protection Board (MSPB) agreed and reversed. I R. 36–47. The employer did not appeal this decision to the MSPB.

In December 1980, following the presiding official's decision, the employer notified Long of its proposal to suspend him for thirty days for the same conduct at issue in the earlier proceeding. I R. 28–30. In a letter dated January 30, 1981, the employer notified Long of its decision to suspend him for thirty days. I R. 33–34. Long elected to contest this second disciplinary proceeding through the contractual grievance and arbitration provision of the collective bargaining agreement. *See* 5 U.S.C. § 7121(f), I R. 23, 27.

In September 1981, the arbitrator in the second disciplinary proceeding issued his decision finding that petitioner was disciplined for just cause. *See* docketing statement Exhibit B.[1] He held that there was no persuasive support for the claim that the earlier decision requiring Long's rein-

statement made the legal doctrine of res judicata governing in this instance. Arbitrator op. at 18. He reasoned that "[n]o reasonable reading of the Board's decision would [lead one to] conclude that Mr. Long was exonerated of the charges leveled against him." *Id.* at 17. "[T]he Hearing Officer merely concluded that the punishment did not fit the crime; that the penalty was 'unduly harsh'; that Mr. Long, considering his past record with the Agency, could be 'rehabilitated'; that 'a lighter penalty would have been more appropriate.'" *Id.* at 18.

The arbitrator believed that if he were to agree with Long's argument that the MSPB's reversal of his removal constituted res judicata as to this thirty-day suspension, he would have to read an "all or nothing" doctrine into the contract. The arbitrator concluded that nothing in the contract required the employer "to base its disciplinary determination on a 'roll of the dice,' meaning that if the MSPB rules the removal is too harsh, the Grievant is immune to any further disciplinary action of a lesser nature." *Id.* at 18–19. The arbitrator held that imposing a thirty day suspension for Long's actions was not arbitrary, capricious or discriminatory. Further, the arbitrator rejected the Union's argument addressed on behalf of Long "that the grievance should be dismissed on the grounds of timeliness," *id.* at 19, essentially an argument that the employer's action in seeking to impose the suspension was untimely.

Long makes four arguments for reversal: (1) the thirty day suspension is barred by the doctrine of res judicata; (2) the arbitrator based his decision strictly upon

---

1. Section 7121(f), 5 U.S.C., provides:

 (f) In matters covered under sections 4303 [concerning actions for unacceptable performance] and 7512 [concerning actions for removal or suspension for more than 14 days] of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the mat-

 ter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures. 5 U.S.C. § 7121(f).

the contract, thereby violating 5 U.S.C. § 7121(e)(2); (3) the thirty day suspension is disproportionate to the offense; and (4) the arbitrator's decision was contrary to the clear language of the contract. We are unpersuaded, and we deny the petition for review.

## II

### Analysis

#### A. Timeliness of petition

Before addressing Long's arguments, we must first consider the employer's contention that Long did not file his petition for review in a timely manner, thereby depriving this court of jurisdiction.

In cases where review is sought of arbitrators' awards, 5 U.S.C. § 7703 procedures apply. 5 U.S.C. § 7121(f). Under 5 U.S.C. § 7703(b)(1) any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board. The arbitrator issued his decision on September 22, 1981. *See* Docketing Statement, Exhibit B. On October 1, 1981, Long received the arbitrator's decision. *See* Petition For Review; Respondent's Brief 4. The Clerk's office for the court of appeals for the Tenth Circuit did not stamp the petition filed until November 12, 1981. *See* Petition for Review. Because petitioner received notice of the arbitrator's decision on October 1, and his petition for review was not stamped filed until November 12, the employer argues that the petition is untimely.

■ Long contends that the petition is not untimely because pursuant to Rule 25(a) it was "received by the clerk within the time fixed for filing." Fed.R.App.P. 25(a). He explains that the petition was mailed via express mail on October 29, 1981, and it should have been received on October 30. The reason the clerk failed to

docket the petition until November 12 was because it was not accompanied by a filing fee or a certificate of service. Petitioner's Reply Brief 3.

We agree with petitioner that his petition was timely. A copy of the petition on file at the clerk's office reveals that it was received within the thirty day filing period on October 30, 1981, but not stamped "filed" until November 12, 1981. Under the plain wording of Rule 25, papers need only be *"received* by the clerk [of the court of appeals] within the time fixed for filing." Fed.R.App.P. 25(a) (emphasis added). Furthermore, the Supreme Court has held that when the clerk of the district court received a notice of appeal within the thirty day filing period, but did not "file" it within that period because the appellant inadvertently failed to include the filing fee, the notice of appeal is nevertheless timely. *Parissi v. Telechron, Inc.,* 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955); *accord Brennan v. United States Gypsum Co.,* 330 F.2d 728, 729 (10th Cir.1964) (untimely payment of filing fee did not vitiate validity of notice of appeal when it was received within the thirty day period); *see also Miller v. United States Postal Service,* 685 F.2d 148, 149 (5th Cir.1982) (petition for review from MSPB's decision not timely when mailed before expiration of thirty day period, but not received until after expiration of this period), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983); *Aldabe v. Aldabe,* 616 F.2d 1089, 1091 (9th Cir.1980) (notice of appeal is timely if received by district court within specified time period even though not filed until expiration of that period); *Deloney v. Estelle,* 661 F.2d 1061, 1063 (5th Cir.1981) (adopting rule from *Aldabe ), appeal reinstated,* 679 F.2d 372 (1982).

■ We hold that the petition for review is timely.[2]

---

**2.** Although not raised by the parties, there is a question as to whether we have jurisdiction to review this decision from the Merit Systems Protection Board (MSPB). We conclude that we have jurisdiction.

Petitioner filed his petition for review on October 30, 1981. The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, took effect on October 1, 1982. *See* 28 U.S.C. § 171 note (1982) (effective date of 1982 Amendment) (FCIA). The FCIA vested exclu-

## B. Res Judicata

Long argues that the prior decision of the presiding official, reversing the employer's decision to remove him, is res judicata as to this second disciplinary proceeding and bars imposition of any penalty for the same allegations of misconduct. Petitioner's Brief 8.

The Supreme Court has said that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *see also* 4 K. Davis, *Administrative Law Treatise* § 21:2, at 49 (2d ed. 1983) (res judicata applies to administrative adjudication); Restatement (Second) of Judgments § 83(1) (valid and final administrative adjudication has same effect under rules of res judicata as judgment of a court); *Neighbors v. Secretary of Health, Education & Welfare,*

511 F.2d 80, 81 (10th Cir.1974) (noting application of res judicata in Social Security Administration rulings and holding that on rejection of second application raising claim for relief previously passed upon, without a hearing on the basis of res judicata, the court of appeals is without jurisdiction to review the dismissal because there is no final decision made after a hearing); *cf. Taylor v. Heckler,* 738 F.2d 1112, 1114–15 (10th Cir.1984) (court assumes, for sake of argument, applicability of doctrine of res judicata to administrative decision denying social security survival benefits; however, since ALJ reopened case in effect in later proceeding and rendered decision on merits, district court should review second decision on merits and not make determination that res judicata barred relitigating claim in second proceeding).

 We conclude that the prior administrative adjudication met the requirements from *Utah Construction* so that courts should give it the same res judicata effect to which it would be entitled if a court had rendered the judgment. Under the doc-

sive jurisdiction in the United States Court of Appeals for the Federal Circuit for appeals from the Merit Systems Protection Board. *See, e.g.,* 5 U.S.C. § 7703(b)(1) (such petitions for review shall be filed with the Federal Circuit); 28 U.S.C. § 1295(a)(9) (federal circuit has exclusive jurisdiction of appeal from MSPB); *Carroll v. Department of Health and Human Service,* 703 F.2d 1388, 1390 (Fed.Cir.1983) (Federal Circuit has exclusive jurisdiction for such appeals). It is clear that we have no jurisdiction to review decisions for which petitions have been filed in this court after October 1, 1982. For petitions filed before this date, however, it is unclear.

The transition provisions of the FCIA do not specifically address this issue. *See* 28 U.S.C. § 171 note (1982) (Transition Provisions). The FCIA does provide that "[a]ny case in which a notice of appeal has been filed in the *district court* of the United States prior to the effective date of this Act [Oct. 1, 1982] shall be decided by the court of appeals to which the appeal was taken." Pub.L. 97–164, § 403(e) (1982) (brackets in original) (emphasis added) (reprinted in 28 U.S.C. § 171 note (1982) (Transition Provisions)). This, of course, does not determine whether we have jurisdiction to review decisions from the MSPB because a notice of appeal from such decisions is never filed in the district court.

In *Lancellotti v. Office of Personnel Management,* 704 F.2d 91 (3d Cir.1983), the Third Cir-

cuit recognized this problem in a virtually identical context. The Third Circuit noted also that the FCIA does not provide for the transfer of such cases to the Federal Circuit even though it "explicitly does order the transfer of cases pending before the court of claims, § 403(a), and the Court of Customs and Patent Appeals, § 403(b)." *Id.* at 98 n. 12. "The analogy derived from § 403(e), and the negative implication arising from §§ 403(a) and (b)," led the Third Circuit to conclude that cases for which a petition was filed before October 1, 1982 could not be transferred to the Federal Circuit, and the same sections provided support for the court's retention of jurisdiction. *Id.* at 98 & n. 12.

The District of Columbia Circuit and the Eleventh Circuit have also held that the courts of appeals have jurisdiction to review decisions from the MSPB that were filed in the court of appeals before October 1, 1982 when the FCIA became effective. *See, e.g., Bruno v. Merit Systems Protection Board,* 744 F.2d 753, 754 (11th Cir.1984); *National Treasury Employees Union v. United States Merit Systems Protection Board,* 743 F.2d 895, 901–02 (D.C.Cir.1984). We are persuaded by these cases to hold that we have jurisdiction to review decisions of the MSPB that were pending in this court before the FCIA took effect.

trine of res judicata "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *see also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982); *Braselton v. Clearfield State Bank*, 606 F.2d 285, 287 (10th Cir.1979); *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1174–75 (10th Cir.1979). The doctrine " 'rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations.' " *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1175 (10th Cir.1979) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)).

Long appears to make two arguments to persuade us that the instant proceeding is barred by res judicata. First, res judicata bars suspending him for thirty days because the presiding official's decision reinstating Long established that any discipline against Long for his actions at issue would not promote the efficiency of the service. Petitioner's Brief 9. Second, the issue of whether a lesser penalty would be appropriate could have been raised in the earlier action. All the employer had to do was appeal the presiding official's decision to the MSPB where it could have argued that in any event a lesser penalty should be imposed; because the employer failed to do this, res judicata bars the current disciplinary action. Petitioner's Brief 10. Neither argument persuades us.

We first reject Long's argument that the prior adjudication reversing the removal of Long determined that *any* disciplinary measure would not promote the efficiency of the service. Although the prior decision of the presiding official should be given res judicata effect so far as that decision requires, we hold that it did contemplate possible further proceedings and a lesser penalty, and thus it did not bar such further proceedings. The presiding official ruled that in view of Long's admission of guilt, the charge was supported by a preponderance of evidence and therefore should be sustained. I R. 84. However, he agreed with Long's argument that under the circumstances the penalty "was too harsh and that it was not taken for such cause as would promote the efficiency of the service." I R. 87. The presiding official did note that some other employees had been charged with absence without leave for periods in excess of that with which Long was charged and had had "no disciplinary action taken against them," I R. 88, which point may lend some support to Long's res judicata argument. Nevertheless, we note that the presiding official reasoned that Long had been an excellent employee for eighteen years, and this was his first offense. Long's first-level supervisor and the deciding officer both believed that he could be rehabilitated "which would indicate that lesser penalty [sic] would have been more appropriate in this situation." I R. 90. We conclude that the earlier decision did not determine that no disciplinary penalty would promote the efficiency of the service.

We must also reject Long's argument that because the employer could have appealed the presiding official's decision to the MSPB and argued to the MSPB that a lesser penalty was appropriate, res judicata bars this action. Petitioner has cited no authority for this proposition, and our research has revealed none.[3]

---

**3.** The authority that we have found, though not speaking directly to petitioner's argument, is inconsistent with it. For example, it has been held that a proceeding reinstating a federal employee because he was not given proper notice of his impending discharge is not res judicata in a second removal proceeding. *See Jenkins v. Macy*, 357 F.2d 62, 66–67 (8th Cir.1966); *see also*

*Adkins v. Hampton*, 586 F.2d 1070, 1073–74 (5th Cir.1978) (where postal employee reinstated because first removal proceeding procedurally defective, Postal Service acted within its discretion when they gave employee a second notice of proposed discharge based on conduct at issue in the first proceeding).

The preclusive scope of a prior judgment "depends on defining the breadth of the claim or cause of action hazarded in the first suit." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4406, at 45 (1981); *see also id.* § 4407, at 48. The treatise concludes that the process of defining a claim or cause of action is "aimed at defining the matters that both might and *should* have been advanced in the first litigation." *Id.* § 4406, at 45 (emphasis in original). We cannot say that the employer should have appealed to the MSPB if it wanted to discipline Long with a lesser penalty. At the time that the employer could have appealed the presiding official's decision to the MSPB, it was not clear that the MSPB had the authority to impose a lesser penalty. Not until April 10, 1981, some five months after the presiding official's decision became final, I R. 46, did the MSPB hold that it had the statutory power to modify or to reduce a penalty imposed on an employee. *See Douglas v. Veterans Administration*, 5 MSPB 313 (1981); I R. 99. We do not believe that the reasonable expectation of the parties was that if the employer did not appeal the presiding official's decision, Long could not be disciplined. *See* C. Wright, A. Miller & E. Cooper, *supra*, § 4408, at 72 ("In many areas of frequent litigation, [the goals of claim preclusion] can be satisfied by generating clear rules. As to more complex or unusual litigation, much may be gained by emphasizing a test of reasonable expectations.").

■ Furthermore, Long's position would not further the purposes of res judicata. Two of these purposes are to prevent inefficient use of judicial resources, and to encourage repose in legal relations. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980) ("[R]es judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote comity between state and federal courts."). *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (footnote omitted); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1175 (10th Cir.1979) (doctrine rests on considerations of economy of judicial time and public policy favoring establishment of certainty in legal relations); C. Wright, A. Miller & E. Cooper, *supra*, § 4407, at 52 (1981) ("concern for efficiency and repose must be tempered by concern for the imperfections of our litigating process").

Professors Wright, Miller & Cooper in "speculating about the optimal reach of claim preclusion" caution against its "maximum expansion." *See* C. Wright, A. Miller & E. Cooper, *supra*, § 4407 at 51–52. They reason that "[r]ules requiring assertion of all claims at once on pain of forfeiture would often increase litigation of matters that otherwise would be forgotten or forgiven.... [E]fficiency and repose are not always well served by compelling maximum joinder and that concern for efficiency and repose must be tempered by concern for the imperfections of our litigating process." *Id.* Requiring the employer to appeal the presiding official's decision to the MSPB if the employer wanted to discipline Long would not serve the goals of efficiency and repose. Here the employer accepted the presiding official's decision that removing Long was too harsh a penalty. It then sought to impose a lesser penalty. It seems to us that it might not be unusual that the employee would not challenge the lesser penalty, thus ending the litigation. The case might never reach the MSPB. The rule suggested by Long would produce the opposite result. It would require the employer to appeal to the MSPB if it wanted to impose a lesser penalty, even though it agreed that the initial penalty was too harsh. Such a result would needlessly compel government agencies to bring matters before the MSPB which "otherwise would be forgotten or forgiv-

**346**

en." C. Wright, A. Miller & E. Cooper, *supra*, § 4407, at 52.

Therefore we hold that the instant proceeding was not barred by the presiding official's prior decision.

### C. Section 7121(e)

■ Long argues that the arbitrator violated 5 U.S.C. § 7121(e) by basing the decision entirely on the contract. The thrust of Long's argument is that the arbitrator acted contrary to § 7121(e) by only giving effect to certain provisions in the contract, misallocating the burden of proof to Long. *See* Petitioner's Brief 13. Section 7121(e) provides that the grievance procedure is governed by 5 U.S.C. § 7701. Long says that this section outlines the MSPB's appellate procedures and that the arbitrator is required to "consider the personnel action in question from the perspective of the MSPB" and that the arbitrator must determine that the conduct of the employee is proven by a preponderance of the evidence, and also that disciplinary action will promote the efficiency of the service. Petitioner's Brief 11–12.[4]

Long quotes the following passage from the arbitrator's opinion as proof that he acted contrary to § 7121(e)(2):

> The Labor Agreement contains a specific standard of review for the Agency's disciplinary decisions. The Employer is required to prove just cause in the imposition of discipline and to submit substantial evidence to support its decision. Unless the Grievant can prove his innocence

or the existence of mitigating circumstances or that the penalty is, indeed, too harsh, the Arbitrator has no right to substitute his judgment for that of the Employer and dispense his own brand of industrial justice.

Arbitrator's op. at 19. Long contends that the above reasoning "is in direct contradiction" to § 7121(e)(2) because under that section "the agency not the employee has the burden of proof." Petitioner's Brief 12.

The trouble with Long's argument is that a reading of the arbitrator's opinion as a whole demonstrates that the arbitrator did not shift the burden of proof to Long. The opinion itself says that the "employer is required to prove just cause in the imposition of discipline and to submit substantial evidence to support its decision." Arbitrator's op. at 19. Long calls attention to the following statement that unless the Grievant can prove his innocence or the existence of mitigating circumstances, the arbitrator cannot substitute his judgment for that of the employer. *Id.* These statements do not show an erroneous shifting of the initial burden to the employee and in fact follow the statute closely. *See* 5 U.S.C. § 7701(c).[5]

In sum, we find no error in the arbitrator's procedure or his assessment of the evidence.

### D. Appropriateness of thirty day suspension

■ Long argues "that a 30 day suspension is out of proportion to the offense in

**4.** 5 U.S.C. § 7121(f) provides that "section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board." Under 5 U.S.C. § 7703(c) an appeals court "may not set aside a decision of MSPB unless it is found to be (1) arbitrary or capricious, (2) not in accordance with procedural requirements, or (3) not supported by substantial evidence." *Johnson v. Orr*, 747 F.2d 1352, 1354–55 (10th Cir.1984); *see also Vigil v. Post Office Department of United States*, 406 F.2d 921, 924 (10th Cir.1969).

**5.** Sections 7701(c)(1)(A) & (B) in effect require that the agency's decision be supported by substantial evidence in some cases or a preponder-

ance of the evidence in others. Section 7701(c)(2) provides that notwithstanding the requirement that the agency's decision be supported by adequate evidence, the agency's decision cannot be sustained *if the employee or applicant shows* "harmful error," "prohibited personnel practices," or that the decision was "not in accordance with law." Although the arbitrator's statement that he could not substitute his judgment for the employer unless the "[g]rievant can prove his innocence or the existence of mitigating circumstances or that the penalty is indeed too harsh" does not precisely track the language of § 7701(c)(2), it is not inconsistent with it.

such a manner as to constitute abuse of discretion." Petitioner's Brief 14. Long contends that his notice of proposed suspension noted that it was "in accordance with general nature and intent [sic] of course of Action, Item 4, Attachment 1, AFR 40–750." I R. 118. Long points out that cause four of AFR 40–750 concerns leaving the job without permission, and that the discipline for a first offense under this section is only a *reprimand.* Petitioner's Brief 14–15.

We must disagree. Air Force regulations permit a thirty day suspension in the circumstances of this case. It is true that the "listed maximum [penalty] cannot be exceeded unless otherwise authorized by this regulation." AFR 40–750 ¶ 18(a)(3); I R. 56. Long, however, committed a series of offenses. On seven separate occasions he was away from work while his time card reflected that he was present. I R. 118–19. Air Force regulations provide that when "there has been a series of offenses, a more severe penalty than that shown for a single offense may be considered. This penalty may exceed the maximum allowable under the guide for any of the offenses individually." AFR 40–750 ¶ 18(d)(3); I R. 57. Under ¶ 18(d)(3) a more severe penalty than reprimand is permissible, and petitioner's thirty day suspension is consistent with Air Force regulations.

Petitioner also contends that the MSPB's decision in *Douglas v. Veterans Administration,* 5 MSPB 313 (1981), articulated factors to consider in assessing whether a penalty is appropriate, and all but one of these factors "suggest that a thirty day suspension is inappropriate." Petitioner's Brief 15–16. Our "review of punishment for violations of personnel regulations is extremely limited." *Francisco v. Campbell,* 625 F.2d 266, 269 (9th Cir.1980); *see also Gipson v. Veterans Administration,* 682 F.2d 1004, 1011 (D.C.Cir.1982) (court of appeals will not substitute its view of appropriate penalty unless it is so clearly excessive as to constitute abuse of discretion). We agree with the arbitrator's findings upholding the penalty. The arbitrator found that

the allegations are not merely related to being AWOL as the Union has frequently inferred. The charges are far more serious since the employee knowingly and willingly submitted a time card which he knew was in error. His action was not impulsive or spontaneous; it was the product of deliberate design or plan.

Arbitrator's op. at 19.

In view of these findings, we do not believe that the thirty day suspension is disproportionate to the offense. *See, e.g., Gipson v. Veterans Administration,* 682 F.2d 1004, 1008–09, 1012 (D.C.Cir.1982) (dismissal of employee for issuance of unauthorized keys to swimming pool, unauthorized use of pool, and falsification of medical records not so clearly excessive as to constitute abuse of discretion).

**E. Timeliness of discipline**

■ Long argues that his thirty day suspension was not timely under the terms of the collective bargaining agreement. The arbitrator rejected this argument reasoning that the

[c]ontractual time limits cannot be applied literally when an appropriate statutory agency has a removal petition under review. And the Union's contention that the 45 calendar day limitation began its toll on October 2, 1980, the date that the MSPB Presiding Officer rendered her decision is in error. The MSPB initial decision ... clearly states [ ] that it will not become final until November 6, 1980. Thus, if this interpretation of timeliness were applied, the toll clock would begin on the later date not the date of October 2. Since the Notice of Proposed Suspension was dated December 4, 1980, the agency still acted within the prescribed time limits.

Arbitrator's op. at 19–20.

We uphold the arbitrator's interpretation of the contract. In reviewing an arbitrator's decision, " '[c]ourts should be most reluctant to override the earlier committment of both parties to select [a] particular arbitrator as the articulator of their con-

tractual obligations in order to ... relieve one party from the unwelcome result of that purposeful choice.' " *Devine v. White,* 697 F.2d 421, 438 (D.C.Cir.1983) (brackets and ellipsis in original) (quoting Jones & Smith, *Management and Labor Appraisals and Criticisms of the Arbitration Process: A Report with Comments,* 62 Mich. L.Rev. 1115 (1964)). We therefore defer to the arbitrator's interpretation of the contract, which is not without support in the contract.

Alternately, petitioner appears to argue that "if the contractual time limits were tolled by the Board proceedings, then the subsequent 30-day suspension must be considered part of the same disciplinary action." Petitioner's Brief 19. According to petitioner, Section 5.11 of the Labor Agreement would then bar this 30 day suspension because it provides that when the employer is directed to impose a lesser disciplinary sanction following a hearing, the decision is final, and not subject to further review; that this language of the agreement also prevents management from "continuing the same disciplinary process after a decision by an appropriate authority." *Id.* at 19. This interpretation would prevent the employer from imposing a lesser penalty in a case like this. Again we cannot agree that the arbitrator's interpretation is without support in the contract.

### III

In sum, we are not persuaded that the arbitrator's decision should be disturbed for any reason advanced. Accordingly the petition for review is denied and the arbitrator's decision is

AFFIRMED.