Anna WISNIEWSKI, Widow of Edward
Wisniewski, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Respondent.

No. 88–3521.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 25, 1990.

Decided April 3, 1991.

Anna Wisniewski, Mount Carmel, Pa.,
pro se.

Michael J. Denney, Brian E. Peters, Eliz-
abeth J. Shapiro, U.S. Dept. of Labor, Of-
fice of the Sol., Washington, D.C., for re-
spondent.

Before STAPLETON, SCIRICA and
GARTH, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Petitioner, Mrs. Anna Wisniewski, seeks
review of an order of the Benefits Review
Board affirming an administrative law
judge's Decision and Order denying Bene-
fits under the Black Lung Benefits Act, as
amended, 30 U.S.C. §§ 901–945 (1982). As
an initial matter, we have considered
whether the petition for review was filed in
a timely manner, pursuant to section 21(c)
of the Longshore and Harbor Workers'
Compensation Act, 33 U.S.C. § 921(c)(1982),
as incorporated by section 422(a) of the
Black Lung Benefits Act, 30 U.S.C.
§ 932(a), and have concluded that the peti-
tion for review was timely. Therefore, we
have jurisdiction in this matter. However,
we will deny the petition for review.

### I.

Edward Wisniewski, acting *pro se*, filed
an application for benefits under the Black
Lung Benefits Act (the Act), on May 10,
1971.[1]  The Social Security Administration

---

1.  The Act, which is codified at 30 U.S.C. §§ 901–
945, is commonly referred to as the Black Lung
Benefits Act.  Prior to March 9, 1978, the effec-
tive date of the Federal Mine Safety and Health
Amendments Act of 1977, Pub.L. No. 95–164, 91
Stat. 1290 (1977), it was titled the Federal Coal

Mine Health and Safety Act of 1969.  The Act
subsequently was amended by the Black Lung
Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat.
150 (1972);  the Black Lung Benefits Revenue
Act of 1977, Pub.L. No. 95–227, 92 Stat. 11
(1978);  the Black Lung Benefits Reform Act of

denied this claim on March 28, 1975. On April 13, 1978, Mr. Wisniewski elected to seek review of the denied claim by the Department of Labor, under the Black Lung Benefits Reform Act of 1977. Mr. Wisniewski died on January 2, 1979, before the Department of Labor had issued a decision regarding his claim.

His widow, Anna Wisniewski, filed a *pro se* application for survivor's benefits on January 4, 1979. The Department of Labor denied both the survivor's claim and Mr. Wisniewski's claim on June 5, 1980. Mrs. Wisniewski was informed at that time that this decision would become final if she did not take any action within sixty days; she also was told that she could request reconsideration of her claim within one year, on the ground that a mistake had been made in denying the claims, if she submitted proof in support of that request. Although Mrs. Wisniewski sent a letter to the Department within sixty days, seeking an extension of time to submit evidence, she neither submitted new evidence nor requested reconsideration of the claims in the year following the Department's decision.[2]

Mrs. Wisniewski, represented by counsel, filed a second application for survivor's benefits on September 4, 1981. The Department of Labor denied this claim on October 15, 1982. The case then was forwarded to the Office of Administrative Law Judges for a formal hearing. The ALJ held a hearing on May 13, 1986 and filed a Decision and Order denying benefits on June 25, 1986. Mrs. Wisniewski filed a timely appeal to the Benefits Review Board (the "Board"). The Board affirmed the denial of benefits, by unpublished opinion dated May 31, 1988.

On June 30, 1988, this court received from Mrs. Wisniewski a letter seeking review of the Board's decision. Mrs. Wis-niewski was requested to furnish the court additional copies of this document; to provide the court with the names and addresses of counsel for respondent; and to pay the docketing fee or file a motion to proceed *in forma pauperis*. Mrs. Wisniewski paid the docketing fee and provided the requisite copies and information on August 10, 1988. Her petition for review was docketed on that date.

On October 12, 1988, respondent (the Director) filed a motion to dismiss for lack of jurisdiction. We held disposition of this motion pending our decision on rehearing in *Shendock v. Director, Office of Workers' Compensation Programs*, 893 F.2d 1458 (3d Cir.) (in banc), *cert. denied,* — U.S. ——, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990).[3]

## II.

In his brief, the Director withdrew his motion to dismiss for lack of jurisdiction. The question of our jurisdiction is still at issue, however, because we must determine whether we have jurisdiction before we rule on the merits of a case. *See Shendock*, 893 F.2d at 1461 & n. 7; *Smith v. Evans*, 853 F.2d 155, 157 (3d Cir.1988).

Under section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a), a person adversely affected by a final order of the Board

> may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.

33 U.S.C. § 921(c). The sixty-day time limit for filing a petition for review under

---

1977, Pub.L. No. 95–239, 92 Stat. 95; and amendments to the Internal Revenue Code, Pub.L. No. 97–119, 95 Stat. 1635 (1981).

**2.** By letter dated July 25, 1980, the Department's claims examiner handling these claims informed Mrs. Wisniewski that she had one year to seek reconsideration, and that would allow

ample time for her to gather additional evidence. It thus appears the Department would have considered additional evidence submitted during the one-year period.

**3.** *Shendock* was reargued in banc on December 11, 1989 and was decided on January 12, 1990.

§ 921(c) is jurisdictional. *Shendock,* 893 F.2d at 1462–65.[4]

The procedures for obtaining review of agency orders are set forth in Fed.R. App.P. 15, which provides, in part:

(a) *Petition for review of order; joint petition.*—Review of an order of any administrative agency, board, commission or officer ... shall be obtained by filing with the clerk of a court of appeals which is authorized to review such order, within the time prescribed by law, a petition to enjoin, set aside, suspend, modify or otherwise review.... The petition shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. ....

. . . .

(c) *Service of petition or application.* —A copy of a petition for review ... shall be served by the clerk of the court of appeals on each respondent in the manner prescribed by Rule 3(d), unless a different manner of service is prescribed by an applicable statute. At the time of filing, the petitioner shall furnish the clerk with a copy of the petition or application for each respondent. At or before the time of filing a petition for review, the petitioner shall serve a copy thereof on all parties who shall have been admitted to participate in the proceedings before the agency other than respondents to be served by the clerk, and shall file with the clerk a list of those served.

Fed.R.App.P. 15(a) and (c).[5] The procedures set forth in subsection (a) of Rule 15 are jurisdictional. *Kowaleski v. Director, Office of Workers' Compensation Programs,* 879 F.2d 1173 (3d Cir.1989) (citing *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)), *cert. denied,* —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *see Harmar Coal Co. v. Director, OWCP,* 926 F.2d 302, 309 (3d Cir.1991) (principles announced in *Torres* apply to black lung cases under Rule 15). In *Kowaleski,* the petition for review did not specify a real party in interest and counsel's motion to amend the petition to specify a proper party was not filed within the time prescribed by § 921(c).[6] We concluded that the Rule 15 requirement that a petition for review "shall specify the parties seeking review" is jurisdictional. Because the petition was defective and the motion to amend was untimely, we lacked jurisdiction to review the Board's order.

The Board issued its order in this case on May 31, 1988. Mrs. Wisniewski's written request for review of the Board's order was received in this court on June 30, 1988. The petition for review was not docketed, however, until August 10, 1988, after Mrs. Wisniewski had submitted additional copies of her petition and informed the court of the names and addresses of counsel for respondent, in compliance with Rule 15(c), and had paid the docketing fee.

The question presented in this case, therefore, is whether a petition for review is timely if it is received in the court of

4. All of the courts of appeals which have considered the nature of the sixty-day time limit in § 921(c) have determined that it is jurisdictional. *See, e.g., Brown v. Director, OWCP,* 864 F.2d 120 (11th Cir.1989); *Bolling v. Director, OWCP,* 823 F.2d 165 (6th Cir.1987) (order); *Butcher v. Big Mountain Coal, Inc.,* 802 F.2d 1506 (4th Cir.1986); *Dawe v. Old Ben Coal Co.,* 754 F.2d 225 (7th Cir.1985); *Clay v. Director, OWCP,* 748 F.2d 501 (8th Cir.1984); *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35 (2d Cir.1976), *aff'd on other ground sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

5. Federal Rules of Appellate Procedure 3 and 4, which set forth the requirements for filing a notice of appeal, are the counterparts to Rule 15. Unlike Rule 3, however, Rule 15 makes no

provision for the payment of fees. *Compare* Fed.R.App.P. 3(e) *with* Fed.R.App.P. 15.

6. Peter Kowaleski filed a claim for benefits under the Act, listing his wife Anna as his dependent. Anna died while this claim was pending administratively; Peter died prior to his formal hearing before an ALJ. His attorney failed to formally substitute the executor of the estate as the claimant. When the ALJ filed his decision, he inexplicably listed Anna Kowaleski as claimant. Appeal was taken to the Board in the name of Anna Kowaleski. A petition for review was submitted to this Court in the name of Anna Kowaleski, as widow of the original claimant, Peter Kowaleski. Subsequently, counsel filed a motion to substitute the executor as claimant-appellant.

appeals within the sixty-day period set forth in § 921(c) but is not filed by the clerk until the petitioner has submitted additional copies of the petition and a list containing the names and addresses of counsel for respondent, in compliance with Rule 15(c), and has paid the docketing fee or filed a motion to proceed *in forma pauperis*. We will have jurisdiction if Mrs. Wisniewski's petition for review properly may be considered as filed upon its receipt in this court on June 30, 1988, within sixty days after issuance of the Board's order. If, instead, the petition for review is considered as filed on August 10, 1988, upon Mrs. Wisniewski's payment of the docketing fee and submission of additional copies of the petition, the petition was untimely and should be dismissed for lack of jurisdiction.

Unlike its counterpart, Rule 3, Fed.R. App.P., Rule 15 does not expressly state that a petitioner must pay to the clerk the fee established by statute, upon the filing of a petition for review. The payment of filing and docketing fees is not a jurisdictional requirement of Rule 3. *Parissi v. Telechron, Inc.*, 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955) (per curiam) (payment of filing fee beyond thirty-day period for filing notice of appeal does not render appeal untimely); *Gould v. Members of New Jersey Division of Water Policy and Supply*, 555 F.2d 340 (3d Cir.1977) (citing *Parissi*) (untimely payment of the filing fee does not vitiate the validity of notice of appeal received within the thirty-day period prescribed by 28 U.S.C. § 2107 and Fed.R. App.P. 4).

Two courts of appeals have held that a petition for review is timely if received by the clerk of the court of appeals within the time prescribed by statute, despite petitioner's failure to forward the filing fee. In *Long v. United States Department of the Air Force*, 751 F.2d 339 (10th Cir.1984), the clerk of the court of appeals received a petition for review of an arbitrator's award upholding disciplinary action taken by the Department of the Air Force within thirty days of the date the petitioner received notice of the arbitrator's decision;[7] however, the clerk did not docket the petition until the court had received the filing fee and a certificate of service of the petition. Respondent filed a motion to dismiss for lack of jurisdiction, arguing that the petition was not timely because it was filed beyond the thirty-day period prescribed by the applicable statute, 5 U.S.C. § 7703(b)(1). The court held that the petition was timely because it was received within the time prescribed by statute. The court explained that, under "the plain wording" of Fed.R. App.P. 25(a), papers "need only be '*received* by the clerk [of the court of appeals] within the time fixed for filing.'" 751 F.2d at 342 (emphasis in original). The court cited *Parissi* in support of its application of Rule 25. *Id.* Also relying on *Parissi* and reasoning by analogy, the Court of Appeals for the Eleventh Circuit held that a petition for review of a denial of social security benefits is timely if it is received in the district court within the statutory filing period, even if the petition is not marked as filed until payment of the filing fee, after expiration of the time specified in the statute. *Hatchell v. Heckler*, 708 F.2d 578 (11th Cir.1983) (per curiam).

Because the requirement that a petitioner pay a filing or docketing fee for a petition for review is not jurisdictional, payment of such a fee beyond the time prescribed by statute for filing the petition for review does not render the petition untimely or deprive the court of jurisdiction. As noted in *Parissi*, 349 U.S. at 47, 75 S.Ct. at 577, there are other sanctions a court may impose to enforce the requirement that petitioner pay the filing or docketing fee. In this court, for example, failure to pay the docketing fee within fourteen days after docketing of the proceeding will result in dismissal of the proceeding. 3d Cir.R. 28(1).

Rule 15 provides that the clerk shall serve a petition for review "on each respondent in the manner prescribed by Rule 3(d), unless a different manner of service is pre-

---

7. Judicial review of an arbitrator's award in such a case is in the same manner and on the same basis as a final decision of the Merit Systems Protection Board. 5 U.S.C. § 7121(f).

scribed by an applicable statute." Fed.R. App.P. 15(c). Because the Act does not prescribe a different manner of service, the clerk would effect service as provided in Rule 3(d), which provides in part:

> The clerk of the district court shall serve notice of the filing of a notice of appeal by mailing a copy thereof to counsel of record of each party other than the appellant, or, if a party is not represented by counsel, to the last known address of that party;.... The clerk shall note on each copy served the date on which the notice of appeal was filed.

> Failure of the clerk to serve notice shall not affect the validity of the appeal.

Fed.R.App.P. 3(d). The rule also requires that, at the time of filing, the petitioner furnish the clerk with a copy of the petition for each respondent. Fed.R.App.P. 15(c).

Nothing in the plain language of Rule 15(c), or its counterpart, Rule 3(d), indicates that the clerk must serve a petition for review on respondents within the time specified by the applicable statute for filing the petition for review, or that failure to accomplish service within that time deprives the reviewing court of jurisdiction.[8] Our research has uncovered no decision holding that the service requirements of Rule 15(c) are jurisdictional.

Under Rule 25, a document is timely filed if it is "received by the clerk within the time fixed for filing."[9] Fed.R.App.P. 25(a). This court has held that "it is the notice of appeal, or petition for review, filed by the party seeking appeal or review, that confers jurisdiction upon the court."[10] *Shendock*, 893 F.2d at 1464; *see also Long*, 751 F.2d at 342 (petition for review was timely upon its receipt, despite petitioner's failure to submit a certificate of service of petition at that time).

Consistent with our position in *Shendock* that it is the act of filing the petition for review, accomplished within the time limit prescribed by statute, that confers jurisdiction upon the court, we hold that the requirements of Rule 15(c) are not jurisdictional. This is not to say that petitioners should be excused from compliance with Rule 15(c). Under the rules of this court, the clerk may dismiss a proceeding for want of prosecution if, after notice, a litigant fails to comply with the Rules of Appellate Procedure or the rules of the court. 3d Cir.R. 28(2).

Because Mrs. Wisniewski's petition for review was received in this court within the sixty-day time limit prescribed by § 921(c), the petition was timely filed.[11] We have jurisdiction under 30 U.S.C. § 932(a) and 33 U.S.C. § 921(c).

### III.

■ We now turn to Mrs. Wisniewski's claim that the Board erred in denying benefits under the Act. We review Board decisions for errors of law and adherence to the Board's statutory scope of review. *Hillibush v. U.S. Department of Labor*, 853 F.2d 197, 202 (3d Cir.1988); *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 (3d Cir.1986). The Board is required to uphold the ALJ's decision if it is in accordance with law and is supported by substantial evidence from the entire record. *See* 33 U.S.C. § 921(b)(3) (1982); 20 C.F.R. § 802.301 (1990). To determine whether the Board has adhered to its scope of review, we must independently review the record and determine whether the ALJ's

---

**8.** Rule 15(c) also provides that the petitioner shall serve a copy of the petition on all parties who were admitted to participate in the proceedings before the agency, other than respondents to be served by the clerk, and that petitioner shall file with the clerk a list of those so served.

**9.** Rule 25 applies to review of orders of agencies. Fed.R.App.P. 20.

**10.** This statement in *Shendock* was made in the context of petitioner's argument that "filing", as used in § 921(c), refers to the Board's filing of the record. Rejecting this argument, we reasoned that it is the filing of the petition for review, and not the compliance of the Board with the statutory command that it file the record, that confers jurisdiction on the court.

**11.** We note that Mrs. Wisniewski promptly paid the docketing fee and provided the requisite copies of her petition for review, upon notice of these requirements by the Clerk's Office. Thus, this is not a case in which sanctions under Court Rule 28 would have been appropriate.

findings are supported by substantial evidence. *Kertesz*, 788 F.2d at 163. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Benefits under the Act are awarded to miners who are totally disabled due to pneumoconiosis arising out of coal mine employment, and to certain survivors of miners who died due to, or while totally or partially disabled by, pneumoconiosis. 30 U.S.C. § 901(a) (1982). Because Mrs. Wisniewski's application for survivor's benefits was filed after March 31, 1980, her claim is adjudicated under Part 718 of the permanent black lung regulations. 20 C.F.R. § 718.2 (1990); 20 C.F.R. § 725.4(a) (1990). Under Part 718, Mrs. Wisniewski must show that her husband had pneumoconiosis, that he contracted it through his coal mine employment, and that he was totally disabled due to pneumoconiosis or his death was due to pneumoconiosis. 20 C.F.R. §§ 718.201–.206 (1990); *see Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir. 1987). In this case, the Director concedes that Mr. Wisniewski had pneumoconiosis.[12] The ALJ rejected Mrs. Wisniewski's claim because he concluded she failed to show that the pneumoconiosis arose from coal mine employment. The Board affirmed. Because the ALJ resolved the claim for survivor's benefits on this basis, neither he nor the Board considered whether Mr. Wisniewski's death was due to pneumoconiosis

or whether he was totally disabled due to the disease.

To be eligible for benefits under the Act, a claimant must show that the miner's pneumoconiosis arose at least in part out of coal mine employment. 20 C.F.R. § 718.203(a). Section 718.203(b) of the regulations provides that a miner with ten or more years of coal mine employment is entitled to a rebuttable presumption that his pneumoconiosis arose out of coal mine employment. 20 C.F.R. § 718.203(b). Miners with less than ten years of coal mine employment must establish the causal relationship between their pneumoconiosis and that employment. 20 C.F.R. § 718.203(c).[13]

In his initial application for black lung benefits, Mr. Wisniewski stated that he worked in coal mines for three years, from June 1916 through September 1919. In her application for survivor's benefits filed in 1981, Mrs. Wisniewski stated that her husband had seven years of coal mine employment. At the hearing before the ALJ, however, Mrs. Wisniewski testified that she had no personal knowledge of the nature and extent of her husband's mine work. She said that he did not work in the coal mines after their marriage in 1930. A medical report prepared in 1975 states that Mr. Wisniewski had worked three years in the coal mines and twenty-five years in a bakery. We find that there is substantial evidence to support the ALJ's determination that Mr. Wisniewski worked in coal mines for three years. Because her husband had worked in coal mines for less

---

**12.** The regulations define pneumoconiosis as follows:

> For the purpose of the Act, 'pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 718.201.

**13.** *The regulations set forth the causation standard as follows:*

> (a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment. The provisions in this section set forth the criteria to be applied in making such a determination.
>
> ....
>
> (c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

20 C.F.R. § 718.203(a) and (c).

than ten years, Mrs. Wisniewski had to demonstrate a causal relationship between his pneumoconiosis and his coal mine employment.

As we have noted, in his original application for benefits filed in 1971, Mr. Wisniewski stated that he worked in coal mines from 1916 to 1919 and that he worked as a baker after he left the coal mines:

> [m]y life has been spent as an oven operator of a bakery ever since I left the mines in 1919. While working in the bakery I was exposed to a good deal of dust when raking the coal fires as well as working with the flour caused me to breath a good deal of that.

Social Security records confirm that Mr. Wisniewski worked in bakeries for at least twenty-three years. Mrs. Wisniewski testified at the hearing that she met her husband in 1927; that she had no knowledge of her husband's work history prior to 1927; that he worked as a salesman and did not work as a miner after they were married, in 1930; that he did not work as a baker after they bought the Home Bakery in the late 1940s; that she had done all of the work involving the coal-fired ovens in their bakery; and that he retired in 1970, at the age of 65. She also testified that Mr. Wisniewski began to experience respiratory problems in 1937 (difficulty breathing and swallowing, coughing up grayish phlegm); that he began taking medication for his breathing and coughing problems in 1975; and that he saw a doctor monthly for the last few years of his life.

The only relevant medical evidence before the ALJ on the issue of causation was the 1975 report of Dr. William A. Lustusky, based on examinations of Mr. Wisniewski between 1971 and 1975. In that report, Dr. Lustusky described Mr. Wisniewski's work history as employment in coal mines for three years and "in a bakery" or "as a Baker" for twenty-five years. His diagnosis was minimal anthracosilicosis and his opinion was that Mr. Wisniewski was disabled as of December 26, 1971. Dr. Lustusky's report does not describe the extent of Mr. Wisniewski's exposure to coal dust in any of his work sites nor does it state that his work in the coal mines contributed to his anthracosilicosis. As we have noted, the Director concedes the presence of pneumoconiosis. The medical certificate on the Local Registrar's Certification of Death that was filed with the Commonwealth of Pennsylvania states that death was caused by pulmonary hemorrhage due to anthracosilicosis.

The ALJ determined that Mrs. Wisniewski was not entitled to survivor's benefits under the Act because she failed to establish that her husband's respiratory disease arose from his coal mine employment:

> While claimant's testimony was to the effect that the miner's respiratory disability was caused by his coal mine work, she also acknowledged that Mr. Wisniewski smoked cigarettes for many years. None of the doctors who treated or evaluated the miner attributed the miner's respiratory disease to his three years of coal mine work. In absence of competent evidence to establish a relationship between the miner's pneumoconiosis and his coal mine work, I find that entitlement to black lung benefits is precluded.

Decision and Order (No. 84–BLA–1500) at 6 (citation omitted). The Board held there was substantial evidence in the record to support the ALJ's decision:

> [T]he administrative law judge properly found that since claimant testified as to the miner's long history of smoking, and because none of the physicians of record who treated or evaluated the miner attributed the miner's respiratory disease to his coal mine employment, claimant failed to present competent medical evidence establishing causation of the miner's pneumoconiosis.

Decision and Order (BRB No. 86–1898 BLA) at 2 (citations omitted).[14]

---

**14.** The Director concedes that the smoking history was improperly relied on by both the ALJ and the Board. "It is the Director's position, however, that while smoking causes many respiratory diseases, it cannot cause the radiologic impressions characteristic of pneumoconiosis. The Director, therefore, does not rely on the miner's smoking history as an alternate exposure capable of contributing to the miner's clinical pneumoconiosis." Brief of Director, Office

As we have noted, when a miner has less than ten years of coal mine employment, the miner must establish that his pneumoconiosis arose at least in part out of his coal mine employment. The ALJ may infer such a causal connection between the miner's pneumoconiosis and his coal mine employment if the record indicates no other potential dust exposure. *See Maxey v. Califano,* 598 F.2d 874, 876 n. 3 (4th Cir. 1979). When the record includes evidence that the miner was exposed to coal dust from a source other than his coal mine employment, the ALJ must weigh that evidence against any competent evidence produced by the claimant to determine whether the miner's pneumoconiosis arose out of his coal mine employment.

In this case, Mr. Wisniewski worked three years in the coal mines. The record contains evidence that he worked for over twenty-three years in bakeries, in which he was exposed to coal dust at least part of that time. With regard to his exposure to dust in the bakeries, Mrs. Wisniewski's statements appear to conflict with her husband's. Mr. Wisniewski claimed to be an oven operator, but Mrs. Wisniewski testified that he was a bread salesman, not a baker, and that she raked the coal fires in the oven.

Although it appears that the ALJ never explicitly resolved these conflicting statements, he did credit Mr. Wisniewski's statements over Mrs. Wisniewski's hearing testimony. In summarizing the pertinent evidence, the ALJ noted that "[f]rom 1919 until 1970 he [Mr. Wisniewski] had been self-employed in a bakery where he was exposed to coal dust and smoke emanating from the furnaces used to bake bread and other products." It was the claimant's burden to establish through competent evidence that the miner's pneumoconiosis arose at least in part from his three years in coal mine employment. The ALJ found that she did not meet this burden.

In reaching this conclusion, the ALJ took into consideration the miner's smoking history. We believe the ALJ erred in considering Mr. Wisniewski's smoking history as

relevant to causation in this case. Because smoking cannot cause the radiologic impressions characteristic of pneumoconiosis, it is not an alternate exposure capable of contributing to a miner's clinical pneumoconiosis. As we have stated, the Director conceded before the ALJ that clinical pneumoconiosis had been established.

Despite this, we believe the ALJ's findings were supported by substantial evidence. As we have noted, Mr. Wisniewski worked in coal mines for three years. In his own application for benefits, he stated that he was exposed to "a good deal of dust" when raking coal fires in his work as a baker. Although Mrs. Wisniewski testified that her husband did not work as a baker after their marriage in 1930, she also said she had no knowledge of her husband's work history from 1919 to 1927. The ALJ credited Mr. Wisniewski's statement of his exposure to coal dust from coal-fired bakery ovens. To show causation, Mrs. Wisniewski had to produce some competent evidence that her husband's disease arose at least in part from his coal mine employment. This she did not do. The only source of such evidence in this case, other than Mrs. Wisniewski's testimony, would have been the medical report prepared by Dr. Lustusky. In that report, however, Dr. Lustusky neither states an opinion that Mr. Wisniewski's work in the coal mines contributed to his anthracosilicosis nor describes the extent of Mr. Wisniewski's exposure to coal dust in any of his work sites. Both the ALJ and the Board found that the evidence produced by Mrs. Wisniewski was not sufficient to show that her husband's pneumoconiosis arose from his coal mine employment.

### IV.

The petition for review in this case was timely filed. Upon review of the record, we determine that the ALJ did not err in concluding that Mrs. Wisniewski failed to produce competent evidence to establish

causation. Accordingly, we will deny the petition for review.

Each side to bear its own costs.